### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 5:25-CR-41-MTT-CHW |
| | : | |
| JOHN CATO, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## <u>PLEA AGREEMENT</u>

The United States Attorney for the Middle District of Georgia ("United States") and Defendant John Cato enter into this plea agreement, agreeing as follows:

### (1)

Defendant acknowledges that Defendant has reviewed and discussed the Superseding Indictment against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant her understanding of the United States' evidence.

### (2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by a jury. Defendant understands that at a jury trial Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' witnesses, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf,

1



but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

(3)

Being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, Defendant agrees pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), as follows:

(A)    Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count Three of the Superseding Indictment which charges Defendant with Firearms Trafficking in violation of Title 18, United States Code, Sections 933(a)(1) and 933(b).

(B)    Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to the following penalties on Count Three:

- a maximum sentence of fifteen years imprisonment;
- a maximum fine of $250,000.00, or both; and
- a term of supervised release of three years.

Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C)    Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the United States, or the Probation Office. Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea on the ground that Defendant received an estimated guideline range from the United States, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in

2



the Presentence Investigation Report or different from the guideline range found by the Court to be the correct guideline range.

(D)    Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigation Report has been completed. Defendant understands and has discussed with Defendant's attorney that Defendant will have the opportunity to review the Presentence Investigation Report and to object to and challenge any facts reported therein. Defendant understands and has discussed with Defendant's attorney that any objections or challenges by Defendant or Defendant's attorney to the facts or recommendations presented in the Presentence Investigation Report or any disagreement with the Court's rulings on such objections or challenges will not be grounds for withdrawing the plea of guilty. Nothing in this agreement precludes the United States from providing full and accurate information to the Court and the Probation Office for use in calculating the advisory guideline range applicable to Defendant.

(E)    Defendant understands and has discussed with Defendant's attorney that after the Court determines the advisory guideline range applicable to Defendant, the Court has the discretion and authority to impose a sentence that is more severe or less severe than the sentence recommended by the guidelines.

(F)    Although 18 U.S.C. § 3742 authorizes defendants to appeal their sentences under certain circumstances, Defendant knowingly and voluntarily waives any right to appeal Defendant's sentence, including the amount of any restitution imposed as part of Defendant's sentence. Defendant's sentence appeal waiver does not apply if: (1) the Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the Court at the time of sentencing; (2) the Court imposes a sentence that exceeds the statutory maximum; or (3) the

3



United States appeals Defendant's sentence under the authority of 18 U.S.C. § 3742(b). Nothing in this agreement shall deprive the United States of its right to appeal Defendant's sentence, as authorized by 18 U.S.C. § 3742(b).  If, however, the United States appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

Defendant waives any right to collaterally attack Defendant's conviction and sentence under 28 U.S.C. § 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by 28 U.S.C. § 2241.

Defendant understands and acknowledges that the waivers outlined herein may result in the dismissal of any appeal or collateral attack Defendant might file challenging Defendant's conviction or sentence.  If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the United States, be remanded to the Court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

(H)     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules by entering into this plea agreement.  If, after entering into this plea agreement, Defendant fails to plead guilty, or the plea of guilty is later withdrawn, Defendant's statements in connection with this plea, including the stipulation of fact set forth below in paragraph (8), and any leads derived therefrom, shall be admissible for any and all purposes.

4



(I)     Defendant further agrees that all evidence, except biological evidence as defined in 18 U.S.C. § 3600A, if any, obtained in this investigation and prosecution may be destroyed or returned to its rightful owner 30 days after entry of the judgment or thereafter.

(J)     The United States and Defendant hereby agree that any breach of this agreement by Defendant would: (a) not relieve Defendant of Defendant's plea of guilty; (b) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Superseding Indictment; (c) permit the United States to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the United States to utilize against Defendant in any subsequent judicial proceeding any and all statements made by Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States agrees as follows:

(A)     The United States will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought against Defendant solely in this district. The United States agrees to dismiss all remaining counts



of the pending Superseding Indictment in exchange for Defendant's plea of guilty to Count Three of the Superseding Indictment.

(B)    The United States agrees that it will file a motion requesting that Defendant's offense level be reduced by one level under U.S.S.G. § 3E1.1(b) for timely notifying the United States of Defendant's intention to enter a guilty plea, but Defendant understands that whether Defendant is entitled to any offense-level reduction under U.S.S.G. § 3E1.1 is entirely within the Court's discretion. The United States reserves the right to furnish the Court with full and accurate information and/or argue against the two-level reduction for acceptance of responsibility if Defendant engages or has engaged in conduct inconsistent with accepting responsibility, as defined in U.S.S.G. § 3E1.1 and its commentary.

(5)

Nothing herein limits the sentencing discretion of the Court. The United States and Defendant understand and agree that the Court should consider its sentence in light of the advisory United States Sentencing Guidelines. Defendant therefore agrees that at sentencing the Court may determine any fact pertinent to Defendant's sentence by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to the sentence to be imposed by the Court.

(6)

This agreement constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In particular, Defendant acknowledges and agrees that no one has promised Defendant



6

that the Court will impose any particular sentence or a sentence within any particular range in order to induce this plea. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Georgia, and that the agreement does not bind any other component of the United States Department of Justice, nor does it bind any state or local prosecuting authority, unless expressly stated herein.

(7)

As an aid to this Court, the United States and Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. § 6B1.4(d) (Policy Statement), this Court may accept this stipulation as written. The facts set forth below are intended to allow the Court to satisfy it obligation under Federal Rule of Criminal Procedure 11(b)(3)to ensure that an adequate factual basis to support the plea exists. In determining an appropriate guideline range or ultimate sentence, the Court, in its discretion, and consistent with its obligation to determine the facts relevant to sentencing, may consider other information in addition to the facts set forth here.

Subject to the above paragraph, the United States and Defendant stipulate and agree that Defendant is in fact guilty of the offense to which Defendant is pleading guilty, that the following facts are true and correct, and that the United States at trial could prove the following facts beyond a reasonable doubt:

7



On April 23, 2025, a Bureau of Alcohol, Tobacco, and Firearms ("ATF") Confidential Informant ("CI") arrived at a restaurant parking lot in Macon, Georgia, which is located in the Macon Division of the Middle District of Georgia. The CI met with an individual, Lonnie Alexander, and Defendant. Alexander introduced the CI to Defendant. The CI first bought three ounces of methamphetamine from Alexander for $600 in the presence of Defendant, and Defendant thus knew at that time that the CI intended to distribute the methamphetamine based on the amount he purchased. Defendant then offered to sell two firearms and a Glock pistol with a switch, which was a machinegun, to the CI for $1,850. Defendant explained to the CI that the switch made the Glock automatic, which showed Defendant's knowledge that it was a machinegun. The CI then purchased the methamphetamine, firearms, and machinegun with ATF funds.

The CI returned the methamphetamine, firearms, machinegun, and remaining ATF funds to the ATF. The three firearms and machinegun sold to the CI during this transaction were:

1. Taurus, Model G2c, 9 mm pistol, Serial Number AGJ398147, loaded with nine rounds of ammunition in the magazine and one round in the chamber;

2. Taurus, Model G2c, 9 mm pistol, Serial Number TMC98857, loaded with eight rounds of ammunition in the magazine; and

3. Glock, Model 19, 9 mm pistol, Serial Number AFUN311, with a Glock switch installed, containing thirteen rounds in the magazine.

All firearms sold during the April 23, 2025 transaction had traveled outside the state of Georgia before they were in Defendant's possession and thus traveled in and affected interstate commerce.

After the April 23, 2025 transaction, Defendant began communicating with the CI via text message in an effort to sell the CI more firearms. On May 20, 2025, as previously agreed upon

8



with Defendant, the CI arrived at the same restaurant parking lot where the April 23, 2025 transaction took place. Defendant offered to sell the CI seven firearms and a drum magazine for $5,350. The CI paid Defendant $5,350 for the seven firearms and drum magazine. All funds provided to Defendant were ATF funds.

The CI returned the firearms, drum magazine, and remaining ATF funds to the ATF. The seven firearms and drum magazine sold to the CI during this transaction were:

1.  Taurus, Model PT709 SLIM, 9 mm pistol, Serial Number TDR46639, loaded with one round of ammunition in the magazine;

2.  Ruger, Model P90DC, .45 caliber pistol, Serial Number 660-09073, loaded with seven rounds of ammunition in the extended magazine;

3.  Taurus, Model 85 Ultralite, .38 caliber pistol, Serial Number JS89420, loaded with five rounds of ammunition;

4.  Rossi, Model M851, .38 caliber revolver, Serial Number J441576;

5.  Radical Firearms, Model RF-15, .223 caliber rifle, Serial Number 2-002759;

6.  American Tactical Imports, Model OMNI Hybrid, .223 caliber rifle, Serial Number NS281217, loaded with seven rounds of ammunition in the magazine, which had previously been reported stolen;

7.  Smith and Wesson, Model M&P 15-22, .22 caliber rifle, Serial Number LAB9872; and

8.  Fifty-round drum magazine.

All firearms sold during the May 20, 2025 transaction had traveled outside the state of Georgia before they were in Defendant's possession and thus traveled in and affected interstate commerce.

9



After the May 20, 2025 transaction, Defendant continued texting the CI in an effort to sell the CI more firearms. On June 26, 2025, as previously agreed upon with Defendant, the CI and an ATF Undercover Agent ("UCA") arrived at the same restaurant parking lot where the April 23 and May 20, 2025 transactions took place. Defendant arrived and exited the same car from the April transaction. It was driven by Brandon Dejuan Thorpe, who Defendant knew was a convicted felon, and all firearms were within arm's reach of Thorpe.

Defendant offered to sell the UCA a Glock pistol that he said had three different fully automatic settings, showing Defendant's knowledge that it was a machinegun. Defendant then showed the UCA eleven other firearms. The UCA gave Defendant $13,700 for the eleven firearms and machinegun. All funds provided to Defendant were ATF funds.

During the transaction and before the final sale took place, Defendant became nervous and asked the CI if the UCA was associated with law enforcement. To ease Defendant's nerves, the CI told Defendant that the CI was a convicted felon, that he did not want to go to jail, and that he could not "go into a store" to purchase firearms. Defendant then made the sale to the UCA.

After the transaction, the Georgia State Patrol ("GSP") conducted a traffic stop on Defendant and Thorpe because the car tag was not returning in the GSP's database. Once it did return, GSP learned the car was not insured. During that time, the GSP learned that Thorpe had an active warrant from another county and was a convicted felon. The GSP arrested him. During his arrest, GSP found a large amount of cash on Thorpe's person and multiple firearm accessories in the car. Thrope was arrested, and Defendant was given the cash and released.

The UCA returned the firearms, machinegun, and remaining ATF funds to the ATF. The eleven firearms and machinegun sold to the UCA during this transaction were:

1. Glock, Model 42, 380 caliber pistol, Serial Number AESB270;

10



2. Taurus, Model PT738, 380 caliber pistol, Serial Number 29817D;

3. Ruger, Model RXM, 9 mm caliber pistol, Serial Number 094-09971;

4. Glock, Model 26, 9 mm caliber pistol, Serial Number AGKN581, which had previously been reported stolen, with a Glock switch attached;

5. Smith & Wesson, Model 642 Airweight, 38 caliber revolver, Serial Number CPT5257;

6. Cobra, Model CA380, 380 caliber pistol, bearing no Serial Number and Defendant knew it had no Serial Number;

7. E3 Arms LLC, Model Omega-15, 556 caliber rifle, Serial Number EV02741;

8. Ruger, Model Redhawk, 44 caliber revolver, Serial Number 502-07959;

9. Arrow Arms, Model AAR15, 556 caliber rifle, Serial Number AA11248;

10. Century Arms, Model CETME Sporter, 308 caliber rifle, Serial Number C57739;

11. Stoeger, Model 3500, 12-gauge caliber shotgun, Serial Number 75-H22YT-064878, which had previously been reported stolen; and

12. Anderson Manufacturing, Model AM-15, 556 caliber pistol, Serial Number 21456419.

All firearms sold during the June 26, 2025 transaction, except for the Arrow Arms, Model AAR15, 556 caliber rifle, Serial Number AA11248, had traveled outside the state of Georgia before they were in Defendant's possession and thus traveled in and affected interstate commerce.

After the June 26, 2025 transaction, Defendant continued texting the CI in an effort to sell the CI more firearms. On July 9, 2025, as previously agreed upon with the CI, Defendant arrived at the same restaurant parking lot where the April 23, May 20, and June 26, 2025 transactions took place. After Defendant parked, ATF agents and other law enforcement surrounded Defendant's

11



car. Defendant exited the car and began running from the agents into a busy street where he threw his phone onto the pavement in an effort to destroy additional evidence. The agents then caught and arrested Defendant.

The agents began searching Defendant's car and found four firearms and 192 ounces of Promethazine that he intended to distribute. The four firearms found were:

1. Radical, Model RF-15, .223 caliber rifle, Serial Number 2-058331, which had previously been reported stolen;

2. Radical, Model RF-15, Multi-Caliber (300 Blackout) pistol, Serial Number 24-009270, which had previously been reported stolen;

3. Glock, Model 19, 9mm pistol, Serial Number BVGC527; and

4. Smith & Wesson, Model SD40VE, .40 caliber pistol, Serial Number FDC5037, which had previously been reported stolen.

All firearms possessed by Defendant on July 9, 2025 had traveled outside the state of Georgia before they were in Defendant's possession and thus traveled in and affected interstate commerce.

At all relevant times, Defendant was not licensed to deal firearms as required by federal law, and the transactions outlined above were captured on body-worn camera. Defendant now admits that on April 23, 2025, he knowingly possessed and transferred a machinegun in violation of Title 18, United States Code, Sections 933(a)(1) and 933(b), as outlined in Count Three of the Superseding Indictment, and all elements of that crime have been proven beyond a reasonable doubt.

(8)

ACCEPTANCE OF PLEA AGREEMENT

12



Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by Defendant.

SO AGREED, this ___19th___ day of ___November___, 2025

WILLIAM R. KEYES
UNITED STATES ATTORNEY

BY: _____
HANNAH M. COUCH
ASSISTANT UNITED STATES ATTORNEY



I, John Cato, have read this agreement and had this agreement read to me by my attorney, Faith Mote. I have discussed this agreement with my attorney and I fully understand it and agree to its terms. Defendant acknowledges that Defendant authorized and consented to the negotiations between the United States and the attorney for Defendant that led to this agreement.

_____

JOHN CATO
DEFENDANT

I, Faith Mote, attorney for Defendant John Cato, have explained the Superseding Indictment and the United States' evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____

FAITH MOTE
ATTORNEY FOR DEFENDANT          TN BAR # 036883

14